IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JOSEPH E. DEAR, et al.,

    Plaintiffs,

        v.

TROJAN HORSE, LTD., et al.,

    Defendants.

CIVIL NO.: WDQ-13-1345

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Joseph E. Dear and others[1] (collectively, "the Plaintiffs"), sued Trojan Horse, Ltd. ("Trojan Horse"), Trojan Horse Ltd.

---

[1] In the proposed Second Amended Complaint, the Plaintiffs also include Steven Malinowski, Duane Williams, Joe Swicicki, Russel Weingrad, Daniel Shaw, James E. Miley, Ricky D. Nelson, Paul E. Doran, Joseph Meekins, Edwin Scott, Robert Forrester, Steven Webb, Richard Schoenhofer, Elvis Zilinskis, David L. Garner, Ray Dotzler, Arturas Karpavicius, and Robert Herbert individually and on behalf of all persons similarly situated. ECF No. 7-2 at 1-2 (hereinafter 2d Am. Compl.). The Plaintiffs define their proposed class as:

> All present and former truck drivers, managers and supervisors employed by Trojan Horse, Ltd., who were participants in the Trojan Horse Ltd. 401(K) Plan ("Plan") and sustained loss of their Plan assets as a result of the Defendants' failure to place the required employee contributions into their Plan accounts from January 1, 2009 through the present. Excluded from the Class are all named Defendants in this action, their shareholders, officers and directors and their immediate family members.

2d Am. Compl. ¶ 103 (emphasis omitted).

401(k) Plan ("the Plan"), Brian Hicks, and others[2] (collectively, "the Defendants"), for violations of the Employee Retirement Income Security Act ("ERISA")[3] and related claims. Pending are the Plaintiffs' motion for leave to file a second amended complaint and motion for a preliminary injunction. Also pending is the Defendants' motion to dismiss. For the following reasons, the Plaintiffs' motion to amend will be granted. The Defendants' motion to dismiss will be denied as moot. The Plaintiffs' motion for a preliminary injunction will be denied.

I. Background[4]

At all relevant times, Trojan Horse provided mail hauling services for the United States Postal Service ("USPS"), under a contract subject to the McNamara-O'Hara Service Contract Act (the "SCA").[5] 2d Am. Compl. ¶¶ 61-62. Trojan Horse was a top

---

[2] The proposed Second Amended Complaint adds BDH Logistics, LLC, Capitol Expressways, Inc., Glen Burnie Hauling, Inc., Susan Stubbs, Sherry Korb, and Sheena Tolson as defendants. 2d Am. Compl.

[3] 29 U.S.C. § 1002 et seq.

[4] The facts are from the Second Amended Complaint. ECF No. 7-2 ("2d Am. Compl."). On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

[5] 41 U.S.C. § 6701 et seq.

USPS supplier with earnings of $19.5 million in 2011.[6] The Plaintiffs were employed by Trojan Horse as drivers on USPS trucking routes. *Id.* ¶ 66. The Plaintiffs were "service employees" under the SCA. *Id.* ¶ 67.

The contract between Trojan Horse and USPS provides that the drivers' compensation is calculated on an hourly basis and requires Trojan Horse to establish fringe benefits for Plaintiffs, including pensions. 2d Am. Compl. ¶¶ 68-69. Effective January 1, 2009, Trojan Horse established the Trojan Horse Ltd. 401(k) Plan (the "Plan") for the benefit of the Plaintiffs. *Id.* ¶ 70. The Plaintiffs were participants in the Plan. *Id.* ¶ 71. As of December 31, 2011, there were 243 active participants and net assets of $2,737,493 in the Plan. *Id.* ¶¶ 75-76. Trojan Horse was an administrator of the Plan at all relevant times. *Id.* ¶ 78. Hicks was an administrator, trustee and fiduciary of the Plan at all relevant times. *Id.* ¶¶ 79-80. The Defendants filed a Form 5500 providing financial information for the Plan from January 1, 2011 to December 31, 2011. *Id.* ¶ 81. The Defendants did not file a Form 5500 for 2012. *Id.* ¶ 83.

---

[6] *Id.* ¶ 63. At all relevant times, Glen Burnie Hauling, Inc., BDH Logistics, LLC, and Capitol Expressways, Inc. were "intimately involved in the mail hauling activities of Trojan Horse." *Id.* ¶ 64.

From January 1, 2012 through May 2013, the Plaintiffs "made contributions from their paychecks for their respective [Plan] accounts." 2d Am. Compl. ¶ 84. The Defendants "placed few, if any, of the required contributions" in the Plan accounts during this time. Id. ¶ 85. The Defendants continue to fail to place those contributions into the Plan. Id. ¶ 86. From 2011 to the present, the Plaintiffs have not received the required quarterly reports from the Plan Administrator or documentation that the required contributions were made to the Plan. Id. ¶¶ 87-88.

The Plaintiffs allege that the Defendants "knowingly and intentionally conspired, caused, permitted and allowed" the Plaintiffs' Plan contributions "to be diverted, converted, and stolen." 2d Am. Compl. ¶ 90. Trojan Horse fired the Plaintiffs and the proposed class members between May 13, 2013 and May 24, 2013. Id. ¶ 94. Approximately 200 drivers, supervisors, and managers were fired in May 2013. Id. ¶ 96. Trojan Horse did not offer any severance benefits to the Plaintiffs. Id. ¶ 97. Trojan Horse also has not paid the Plaintiffs owed back pay or unused vacation benefits. Id. ¶¶ 98-99.

On May 7, 2013, the Plaintiffs sued the Defendants for violations of ERISA and related claims. On May 16, 2013, the Defendants filed an amended complaint. ECF No. 3. On June 3, 2013, the Defendants moved to dismiss. ECF No. 4. On June 19, 2013, the Plaintiffs moved for leave to file a second amended

complaint. ECF No. 7. On June 19, 2013, the Plaintiffs also opposed the motion to dismiss. ECF No. 8. On June 25, 2013, the Plaintiffs moved for a preliminary injunction. ECF No. 11. On July 3, 2013, the Defendants opposed the Plaintiffs' motion to file a second amended complaint, and replied in support of their motion to dismiss. ECF Nos. 12, 13. On July 9, 2013, the Defendants opposed the motion for a preliminary injunction. ECF No. 14. On July 19, 2013, the Plaintiffs replied in support of their motion for leave to file a second amended complaint. ECF No. 15. On July 26, 2013, the Plaintiffs replied in support of their motion for a preliminary injunction. ECF No. 16.

II. Analysis

    A.    Legal Standard

        1.    Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2. Motion to Amend

Under Fed. R. Civ. P. 15(a)(2), a party may amend its complaint with its opponent's written consent or with leave of court. The Court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, "leave to amend should be denied only when the amendment

would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (internal citation and quotation marks omitted). An amendment is futile if it would fail to withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

B.  The Plaintiffs' Motion to Amend

The Plaintiffs seek leave to file a second amended complaint to add an additional ERISA claim, add recently identified corporations and corporate representatives, and additional plaintiffs. ECF No. 7 at 2. The Defendants challenge the motion to amend on three grounds, arguing that the amendment: (1) would be futile; (2) would be prejudicial to the additional defendants; and (3) is designed to avoid the Defendants' pending motion to dismiss. ECF No. 13 at 2.

1.  Futility

The Defendants argue that the Plaintiffs' motion to amend should be denied as futile because it does not cure the defects raised in the motion to dismiss. ECF No. 13 at 2. The Defendants contend that the Plaintiffs cannot assert an ERISA claim because as service employees, the relevant pension plan contributions are governed exclusively by the SCA. ECF No. 4 at

7

2. The Plaintiffs argue that ERISA and the SCA are not in conflict. ECF No. 15 at 3; ECF No. 8 at 7-8.

The SCA provides labor standards to protect the employees of federal government contractors. *See Masters v. Maryland Mgmt. Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974). Under the SCA, a covered "service employee" includes "an individual engaged in the performance of a contract made by the Federal Government." *See* 41 U.S.C. § 6701(3)(A). The SCA requires employers to provide fringe benefits including "pensions on retirement or death." *See* 41 U.S.C. § 6703(2). The Secretary of Labor has the authority to enforce the provisions of the SCA. *See* 41 U.S.C. § 6707.

If a party violates a contract provision required by the SCA, such as furnishing of fringe benefits under § 6703(2), the party is liable for an amount equal to the underpayment of compensation due any employee. *See* 41 U.S.C. § 6705(a). The amount due any employee may be withheld from the accrued payment due on the contract between the Federal Government and the contractor. *See* 41 U.S.C. § 6705(b)(1). If the withheld accrued payments are insufficient to reimburse the service employee, "the Federal Government may bring action against the contractor, subcontractor, or any sureties in any court of competent jurisdiction to recover the remaining amount of

underpayment." 41 U.S.C. § 6705(b)(2). The SCA does not provide a private right of action.[7]

The Plaintiffs admit that, at all relevant times, the Plaintiffs were "service employees" within the meaning of the SCA. 2d Am. Compl. ¶ 67. The Plaintiffs argue that the two statutes are not mutually exclusive and can be harmonized, allowing the Plaintiffs to bring a private right of action under ERISA. ECF No. 8 at 9-11. The Plaintiffs point to a number of cases in which courts found that the SCA could be supplemented by the Fair Labor Standards Act ("FLSA"),[8] even though the FLSA provides a private right of action.[9] The Defendants contend that, although two federal statutes may apply as long as they do not conflict, the remedies under ERISA and the SCA will inevitably conflict. ECF No. 12 at 4, 7.

Here, the Plaintiffs assert claims for breach of fiduciary duties arising under 29 U.S.C. § 1132(a)(2) and (3) of ERISA.

---

[7] See Danielson v. Burnside-Ott Aviation Training Ctr., 941 F.2d 1220, 1227 (D.C. Cir. 1991); Lee v. Flightsafety Servs. Corp., 20 F.3d 428, 431 (11th Cir. 1994); Inkrote v. Prot. Strategies, Inc., No. 3:09-CV-51, 2009 WL 3295042, at *7 (N.D. W. Va. Oct. 13, 2009).

[8] 29 U.S.C. § 201 et seq.

[9] See ECF No. 8 at 9-10; Lee v. Flightsafety Servs. Corp., 20 F.3d 428, 431 (11th Cir. 1994) ("It is possible that the FLSA may allow a private right of action even though the SCA does not. Such a difference between the two statutes is not a conflict.") (internal citations omitted); Masters, 493 F.2d at 1332 (holding that the SCA and FLSA are not mutually exclusive and the provisions may apply if they do not conflict).

*See* Am. Compl. ¶ 115. Under § 1132(a)(2), a participant can bring a civil action for appropriate relief under 29 U.S.C. § 1109. *See* 29 U.S.C. § 1132(a)(2). Section § 1109 provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(b). Under § 1132(a)(3), a participant can enjoin violations, or obtain other equitable relief to address violations or enforce provisions of ERISA or terms of the plan. 29 U.S.C. § 1132(a)(3). The Plaintiffs allege that the Defendants breached their fiduciary duties by engaging in prohibited transactions, allowing employee contributions to be diverted, and failing to act solely in the interest of the participants and beneficiaries of the Plan. *See* 2d Am. Compl. ¶¶ 118-32.

The SCA does not provide an administrative remedy unless the Defendants violated an SCA-mandated contract provision. *See* 41 U.S.C. § 6705(a). Here, the Plaintiffs allege that they made employee contributions from their paychecks for their Plan accounts, which the Defendants diverted in violation of their

fiduciary duties under ERISA. 2d Am. Compl. ¶¶ 84-85, 89-90. There is no indication from the complaint that these actions violated a required SCA contract provision.[10] The complaint does not appear to be attempting an end-run around the SCA's ban on private rights of action by bringing an action for the equivalent of SCA damages under the guise of ERISA.[11] The actions that give rise to the claims and the remedies they provide are different.[12] Because the SCA does not provide a

---

[10] The Defendants argue that in actuality, the contributions in question were SCA-mandated employer contributions. See ECF No. 14 at 2; ECF No. 12 at 9 n.6. The SCA administrative scheme would provide a remedy for the underpayment of SCA-mandated employer contributions. See 41 U.S.C. §6705. However, the Plaintiffs' second amended complaint alleges that the Defendants diverted employee contributions designated for a pension plan subject to ERISA. See 2d Am. Compl. ¶¶ 8, 84-86. Whether the contributions are SCA-mandated employer contributions or employee contributed "plan assets" under ERISA is not appropriately resolved at the motion to dismiss stage.

[11] Compare U.S. ex rel. Sutton v. Double Day Office Servs., Inc., 121 F.3d 531, 534-35 (9th Cir. 1997) (holding plaintiff can bring claim under the False Claims Act because claim was based on different action and sought different damages than a violation of the SCA), with Danielson v. Burnside-Ott Aviation Training Ctr., 941 F.3d 1220, 1227-29 (D.C. Cir. 1991) (holding plaintiff could not bring RICO claim for SCA violation because SCA provides exclusive remedy for violations).

[12] The ERISA claims arise out of a breach of fiduciary duties for diverting employee contributions to the Plan, by contrast a claim under the SCA would be based on the Defendants' violation of a SCA-mandated contract provision requiring employer payment of fringe benefits such as pensions. See 29 U.S.C. §§ 1132(a), 1104, 1106, 1109; 41 U.S.C. §§ 6703(2), 6705. The remedy under the SCA would be for "an amount equal to the sum of any . . . underpayment of compensation due any employee engaged in performance of the contract." 41 U.S.C. § 6705(a). Under

11

remedy for the violations alleged by the Plaintiffs, it is not clear at this point that the remedy schemes under the SCA and ERISA will conflict.[13] The Plaintiffs are not automatically foreclosed from asserting claims under other related federal statutes because they are service employees within the meaning of the SCA.[14] Accordingly, because the Plaintiffs' ERISA claims are not precluded by the SCA, the motion to amend the complaint is not futile.[15]

---

ERISA, the Plaintiffs seek restitution for the employee contributions that were not placed in the Plan, reimbursement of the Plan for all losses, and an injunction barring the misappropriating of future employee contributions. *See* 2d Am. Compl. ¶¶ 117, 133. Under ERISA § 1109, a fiduciary may also be liable to restore any profits made through the use of plan assets and be subject to other equitable relief. 29 U.S.C. § 1109(a).

[13] *See Berry v. Andrews*, 535 F. Supp. 1317, 1318-19 (M.D. Ala. 1982) (holding plaintiff can assert claim for retaliatory discharge under the FLSA because the SCA does not provide relief under its administrative provisions); *Pantoja v. Edward Zengel & Son Exp., Inc.*, No. 10-20663, 2011 WL 7657382, at *2 (S.D. Fla. May 31, 2011) (concluding that the SCA does not foreclose the plaintiff's cause of action under ERISA for breach of fiduciary duties in wrongfully diverting employee contributions).

[14] *See Masters*, 493 F.2d at 1332 (holding plaintiffs could bring claim under FLSA when the SCA also applied).

[15] The Defendants also argue that the Department of Labor has primary jurisdiction to resolve these claims, and the Court should refer the issue to the Department and dismiss the case without prejudice. ECF No. 12 at 10. The Defendants have provided evidence that they are in negotiations with the Department of Labor for their failure to properly fund the Plan in violation of the SCA. *See* ECF No. 12-1. However, as discussed above, the SCA does not provide relief for Plaintiffs' asserted ERISA claims based on breach of fiduciary duties in

2. Prejudice

The Defendants also argue that the amendment is prejudicial because it requires the additional defendants named in the second amended complaint to undertake the legal costs necessary to defend a suit they believe will ultimately prove meritless. *See* ECF No. 13 at 6.

The nature and timing of the amendment will often determine whether an amendment is prejudicial. *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An amendment that "raises a new legal theory that would require the gathering and analysis of facts not already considered" by the defendant offered shortly before trial would be prejudicial. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). An amendment is not prejudicial if "it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. Here, the Plaintiffs seek to amend the complaint early in the proceedings. The Court has not issued a scheduling order, and there has been no discovery. The proposed Second Amended Complaint adds a similar theory of ERISA liability that would not require any significant gathering or analysis of additional facts.

---

diverting employee contributions. Although the Plaintiffs' alleged claims are not covered by the administrative scheme of the SCA, the Department of Labor may have primary jurisdiction if the contributions in question are found to be within the scope of the SCA.

In determining whether to grant a motion to amend seeking to join additional parties, the Court "must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001). Under Rule 20(a), plaintiffs may be joined if they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences," and they share "any question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1). Similarly, defendants may be joined if claims against them arise out of the same transaction or occurrence, and they share any common question of law or fact. Fed. R. Civ. P. 20(a)(2).

The Plaintiffs seek to add 17 representative plaintiffs, all of whom were employed by Trojan Horse as drivers on USPS trucking routes during the relevant time. *See* 2d Am. Compl. ¶¶ 25-60, 66-67. The additional plaintiffs assert ERISA claims arising out of the same actions taken by the Defendants, and based on the same theories of ERISA liability. There is no doubt that there are questions of law and fact common to all plaintiffs. The Plaintiffs also seek to add three corporate defendants and three individual defendants. *See* 2d Am. Compl. ¶¶ 5-7, 20-22. The Plaintiffs allege that the additional corporate defendants are "alter egos" of Trojan Horse, and that

14

each individual defendant is a "party in interest" to the Plan. 2d Am. Compl. ¶¶ 20-22, 65. The claims against these defendants are based on the same set of transactions or occurrences, that is, the alleged breach of fiduciary duties by diverting employee contributions from the Plan. The added expense of litigation for these additional defendants does not make the amendment prejudicial. Accordingly, the amendment is not prejudicial and properly seeks to add additional parties.

3. Improper Motive

The Defendants contend that the "real point" of the Plaintiffs' proposed second amended complaint is to moot the Defendants' pending motion to dismiss. ECF No. 13 at 7. There is no evidence to support the Defendants' argument that the Plaintiffs seek leave to amend the complaint solely to circumvent the Defendants' pending motion. In fact, because the Defendants argue that the amendment would be futile for failing to cure the deficiencies on which their motion to dismiss is based, the Court addressed the merits of the Defendants' motion to dismiss arguments above. *See supra* Part II.B.1. The Plaintiffs have not demonstrated bad faith or improper motive in seeking leave to file a second amended complaint. Accordingly, the motion will be granted.

C.  The Defendants' Motion to Dismiss

The Defendants assert two arguments in support of their motion to dismiss: (1) the SCA administrative scheme provides the exclusive means of relief; and (2) the Plaintiffs cannot bring an ERISA claim because they have not served the Secretary of Labor or the Secretary of the Treasury. ECF No. 4 at 1-2. As discussed above, *supra* Part II.B.1., the Plaintiffs are not foreclosed from bringing an ERISA claim. The Defendants also abandon their second argument by conceding that the proposed Second Amended Complaint was properly served on the Secretary of Labor and Secretary of the Treasury in compliance with ERISA's service requirement 29 U.S.C. § 1132(h). *See* ECF No. 12 at 2. Because the Second Amended Complaint cured the deficiencies on which the Defendants' motion to dismiss relies, the motion will be denied as moot.

D.  The Plaintiffs' Motion for Preliminary Injunction

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted). Because issuing a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is

substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted).

To obtain a preliminary injunction, the movants must demonstrate that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors them; and (4) an injunction is in the public interest.[16] The movants must show more than a "grave or serious question for litigation"; instead, they bear the "heavy burden" of making a "clear showing that [they are] likely to succeed at trial on the merits." *Real Truth*, 575 F.3d at 347, 351. All four elements must be present. *Id.* at 346.

Here, the Plaintiffs have failed to demonstrate the elements required for a preliminary injunction. The Plaintiffs assert claims against the Defendants for breach of fiduciary duties under ERISA § 1132(a)(2) and (3). *See* 2d Am. Compl. ¶ 115; 29 U.S.C. § 1132(a). Under ERISA § 1109, a fiduciary can be held personally liable for breaching the responsibilities, obligations, or duties imposed upon fiduciaries by the statute.

---

[16] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371, *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

*See* 29 U.S.C. § 1109(b). The Plaintiffs appear to argue that the Defendants are fiduciaries as defined by § 1002(21)(A)(i), which provides that: "[A] person is a fiduciary with respect to a plan to the extent that (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. § 1002(21)(A)(i); ECF No. 11 at 11. ERISA delegates the definition of "plan assets" to the Department of Labor. *See* 29 U.S.C. § 1002(42). Regulations issued by the Department of Labor state that participant contributions are considered "plan assets" when they are "amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan." 29 C.F.R. § 2510.3-102(a)(1).

The Department has not promulgated a regulation governing when employer contributions become plan assets. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B. Obersheimer, Inc.*, No. ELH-12-1000, 2013 WL 594691, at *4 (D. Md. Feb. 13, 2013); *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). The Department has issued informal guidance taking the position that "employer contributions become an asset of the plan only when the contribution has been made." *See Halpin*, 566

18

F.3d at 289. Some circuit courts have found that unpaid employer contributions may be considered plan assets under ERISA if provided for in the plan agreement. *See Halpin*, 566 F.3d at 290; *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013-14 (11th Cir. 2003). The Fourth Circuit has not addressed this issue.

Here, the Plaintiffs allege in their Second Amended Complaint that the contributions at issue are employee contributions. *See* 2d Am. Compl. ¶ 82. However, the employee affidavits submitted with the Plaintiffs' motion for a preliminary injunction repeatedly refer to the contributions at issue as "employer contributions." *See* ECF No. 11-5 ¶ 9; ECF No. 11-6 ¶ 7; ECF No. 11-7 ¶ 6; ECF No. 11-8 ¶ 6; ECF No. 11-9 ¶ 6. The Defendants similarly argue that the contributions are SCA-mandated employer contributions. *See* ECF No. 14 at 2; ECF No. 12 at 9 n.6. The Plaintiffs have not provided Plan documentation indicating whether they are employee or employer contributions, or whether the employer contributions are considered plan assets under the Plan agreement. Thus, the Plaintiffs have not made a clear showing that the contributions at issue are "plan assets" under ERISA.[17] Accordingly, they have

---

[17] *See Pantoja v. Edward Zengel & Son Exp., Inc.*, 500 F. App'x 892, 897 (11th Cir. 2012) (holding unpaid employer contributions were not plan assets absent contractual language); *W. Va. Laborers' Pension Trust Fund v. Owens Pipeline Servs., LLC*, No. 2:10-CV-00131, 2011 WL 5865461, at *2-4 (S.D. W. Va. Nov. 18, 2011) (looking at plan document to determine if unpaid employer

not demonstrated a substantial likelihood of success on the merits of their ERISA claims, and their motion for a preliminary injunction will be denied.

III. Conclusion

For the reasons stated above, the Plaintiffs' motion to amend will be granted. The Defendants' motion to dismiss will be denied as moot. The Plaintiffs' motion for a preliminary injunction will be denied.

_1/29/14_  
Date

_/s/ William D. Quarles_  
William D. Quarles, Jr.
United States District Judge

---

contributions were plan assets); *Int'l Painters*, 2013 WL 594691, at 6 (examining agreement to determine if employer contributions were plan assets).